UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOSEPH L. MIZZONI, | Case No. 3:15-cv-00499-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| STATE OF NEVADA, et al., | |
| Defendants. | |

Plaintiff, who is a prisoner in the custody of the Nevada Department of Corrections ("NDOC"), has submitted an amended civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*. (ECF No. 7, 1.) The matter of the filing fee shall be temporarily deferred. The Court now screens Plaintiff's amended civil rights complaint pursuant to 28 U.S.C. § 1915A.

## I.   SCREENING STANDARD

Federal courts must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915A(b)(1),(2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United

States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act (PLRA), a federal court must dismiss a prisoner's claim, if "the allegation of poverty is untrue," or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint.  When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers.  *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

/ / /

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by a prisoner may therefore be dismissed *sua sponte* if the prisoner's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II.   SCREENING OF AMENDED COMPLAINT

Plaintiff sues multiple defendants for events that occurred while he was incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 7 at 1.) Plaintiff sues Christopher Smith, Brannon, Lisa Walsh, Baca, McDaniel, and Cox. (*Id.* at 2-3). He alleges one count and seeks monetary damages and injunctive relief. (*Id.* 13-11, 14.)

Plaintiff alleges the following in his amended complaint: On March 28, 2015, he was involved in an incident[1] with correctional officer ("c/o") C. Smith that resulted in

---

[1] The incident with c/o Smith occurred after Plaintiff's cell was allegedly "tore up" and Plaintiff subsequently told Smith that he quit his porter job. At that point, an altercation between Plaintiff and officer Smith occurred. These allegations are the subject of another lawsuit filed by Plaintiff: *Mizzoni v. State of Nevada*, 3:15-cv-00313-MMD-VPC.

3

disciplinary charges. (*Id.* at 3-4.) C. Smith wrote a false disciplinary report stating that Plaintiff hit him in the temple. (*Id.* at 7.) The disciplinary hearing for these charges took place on May 1, 2015. (*Id.* at 3.) Lt. Brannon was the hearing officer who presided over the hearing and fellow inmate Christopher Deyerle appeared as Plaintiff's witness. (*Id.*) Plaintiff pleaded not guilty and stated he did not hit c/o Smith on March 28, 2015. (*Id.* at 3-4.) Plaintiff requested all witnesses and video to the incident which Brannon denied except Plaintiff's cellmate at the time of the incident, Deyerle. (*Id.*) Brannon told Plaintiff there was no video of the incident and that any video was for official use only. (*Id.*) Brannon denied all other witnesses that Plaintiff wished to call. (*Id.*) Plaintiff alleges there were inmates all around at the time of the incident and that there is a video camera in the unit that would have captured the incident, as well as a hand held video used by Sergeant Roberson. (*Id.*) Inmate Deyerle testified: "Four cops came in our house cell 5-B-29 and tore it apart. I knew [Plaintiff] was going to tell the cop that the house needs to be put together. When I came out [Plaintiff] was on the wall. C/O Smith went to grab his arm and [Plaintiff] said what are you doing. C/O Smith took him to the ground and said stop resisting. He then yelled for everyone to lock down. At this time other officers arrived and yelled lock down and I locked down." (*Id.* at 4.)  Deyerle stated that were other witnesses in the rotunda who saw the same incident. (*Id.*)  Prior to the disciplinary hearing, Plaintiff wrote to Warden Walsh and asked for all inmate and video evidence. (*Id.* at 4.) Brannon found Plaintiff guilty of battery and dropped the other two charges, assault and abusive language. (*Id.*) Brannon stated he was punishing Plaintiff for prior incidents as far back as eight years ago which Plaintiff has already been punished for.  (*Id.*)  Brannon sentenced Plaintiff to two years of disciplinary segregation. (*Id.* at 5.) Warden Walsh, Warden Baca, Assistant Director McDaniel, and Director Cox "all know Plaintiff didn't hit C. Smith and all conspired and retaliated against Plaintiff for this and prior grievances and lawsuits to obstruct justice . . ." (*Id.*) Plaintiff alleges his Fourteenth Amendment right to due process has been violated. (*Id.* at 7.)

### A. Fourteenth Amendment - Due Process

In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. *Sandin v. Conner*, 515 U.S. 472, 487 (1995). In *Sandin*, the Supreme Court held that a prisoner has a liberty interest when confinement "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. In *Sandin*, the Supreme Court focused on three factors in determining that the plaintiff possessed no liberty interest in avoiding disciplinary segregation: (1) disciplinary segregation was essentially the same as discretionary forms of segregation; (2) a comparison between the plaintiff's confinement and conditions in the general population showed that the plaintiff suffered no "major disruption in his environment;" and (3) the length of the plaintiff's sentence was not affected. *Id.* at 486-87.

When a protected liberty interest exists and a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing that includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance where the charges are complex or the inmate is illiterate. *See Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974).

"When prison officials limit an inmate's efforts to defend himself, they must have a legitimate penological reason." *Koenig v. Vannelli*, 971 F.2d 422, 423 (9th Cir. 1992). An inmate's right to present witnesses may legitimately be limited by "the penological need to provide swift discipline in individual cases . . . [or] by the very real dangers in prison life which may result from violence or intimidation directed at either other inmates or staff." *Ponte v. Real*, 471 U.S. 491, 495 (1985). Jail officials "must make the decision whether to allow witnesses on a case-by-case basis, examining the potential hazards that may result from calling a particular person." *Serrano v. Francis*, 345 F.3d 1071,

1079 (9th Cir. 2003). Despite this, an inmate has no right to cross-examine or confront witnesses in prison disciplinary hearings. *See Wolff*, 418 U.S. at 567-68.

"[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board." *Superintendent, Massachusetts Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 455 (1985). However, this standard does not apply when a prisoner alleges that a prison guard's report is false. *Hines v. Gomez*, 108 F.3d 265, 268 (9th Cir. 1997).

The Court finds that Plaintiff has stated colorable due process claims against Defendants Brannon and Smith. As the Court recognized in its first screening order (ECF No. 4), Plaintiff has stated a colorable claim against Defendant Brannon. Plaintiff alleges he was denied evidence and witnesses during his disciplinary hearing held on May 1, 2015, which was overseen by hearing officer Brannon and that Brannon punished him for prior acts that he had already been punished for. Plaintiff alleges that he made multiple requests for evidence and witnesses that were denied by Brannon, and that he was punished for conduct beyond the actual charges. The Court also finds that Plaintiff states a colorable claim against Defendant Smith. Plaintiff alleges that Smith made a false disciplinary report. An inmate can state a cognizable claim arising from a false disciplinary report if the false report was done in retaliation for the exercise of his constitutional rights or if the inmate was not afforded procedural due process in connection with the resulting disciplinary proceedings as provided in *Wolff v. McDonnell*, 418 U.S. 539, 563–70 (1974). *See Moore v. Gipson*, Case No. 1:13–cv–01820–BAM, 2014 WL 6893885, *10 (E.D. Cal. Dec. 8, 2014.) Plaintiff alleges that Smith wrote a false report that resulted in a disciplinary hearing in which he did not receive due process. Plaintiff may proceed on his Fourteenth Amendment due process claim against Defendants Brannon and Smith.

**B.     Supervisory Defendants**

A defendant is liable under 42 U.S.C. § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "A

supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§]1983." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

"A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor." *Starr v. Baca*, 652 F.3d 1202, 1206-07 (9th Cir. 2011). "Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates." *Id.* at 1207. As such, "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates." *Id.*

The Court finds that Plaintiff has not stated a colorable claim against Defendants Baca, Walsh, McDaniel, and Cox. Plaintiff has not alleged how these defendants were personally involved with the alleged constitutional violations beyond vague and conclusory allegations such as they "conspired" with Smith to file a false report. Such allegations are insufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Plaintiff fails to state a colorable due process claim against Defendants Baca, Walsh, McDaniel, and Cox and they are dismissed.

### III. CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred at this time.

It is further ordered that Plaintiff's Fourteenth Amendment due process claim will proceed against Defendants Smith and Brannon.

It is further ordered that Defendants Walsh, Baca, McDaniel, and Cox are dismissed.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for ninety (90) days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this ninety-day stay period, no other pleadings or papers will be filed in this case, and the parties will not engage in any discovery. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before ninety (90) days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived. If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account. 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" on or before twenty-one (21) days from the date of this order. The

responding party will have seven (7) days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that the Clerk of the Court will electronically serve a copy of this order and a copy of Plaintiff's amended complaint (ECF No. 7) on the Office of the Attorney General of the State of Nevada, attention Kat Howe.

It is further ordered that the Attorney General's Office must advise the Court within twenty-one (21) days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS 2nd day of September 2016.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

|  |  |
|---|---|
| _____,<br>　　　　　　Plaintiff,<br>　v.<br>_____,<br>　　　　　　Defendants. | Case No.<br><br>REPORT OF ATTORNEY GENERAL RE RESULTS OF THE 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL SHALL FILE THIS FORM. THE INMATE PLAINTIFF SHALL NOT FILE THIS FORM.**

　　On _____ *[the date of the issuance of the screening order]*, the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

1
2
3
4             \_\_\_\_   A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have reached a settlement, even if paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.)

5
6
7             \_\_\_\_   A mediation session with a court-appointed mediator was held on _____ [enter date], and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

8
9
10
11            \_\_\_\_   No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case.  (If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

12
13            \_\_\_\_   No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [enter date].

14
15            \_\_\_\_   No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

16
17            \_\_\_\_   None of the above five statements describes the status of this case.  Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

18                                              * * * * *

**Situation Two: Informal Settlement Discussions Case: The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations**. [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

19
20
21
22
23            \_\_\_\_   The parties engaged in settlement discussions and as of this date, the parties have reached a settlement, even if the paperwork to memorialize the settlement remains to be completed.  (If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.)

24
25
26            \_\_\_\_   The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

27
28            \_\_\_\_   The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement.  The Office of the

Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____       _____
                          Print                                    Signature

Address:   _____       Phone: _____

           _____       Email: _____