MOTION TO RESPOND

1  JOSEPH MIZZONI #68549
2  HIGH DESERT STATE PRISON
3  PO BOX 650
4  INDIAN SPRINGS, NV. 89070
5

6        UNITED STATE DISTRICT COURT
7          DISTRICT OF NEVADA
8

9  JOSEPH MIZZONI                    CASE# 3:15-CV-00499-MMD-WGC
10      Plaintiff

11                                   "MOTION TO RESPOND TO
12  VS                               NOTICE AVAILABILITY
13                                   OF VIDEO MARCH 28,2015
14  STATE OF NEVADA rex,etal,          AND OPPOSE"
15      Defendants
16

17      COMES NOW, the plaintiff Joseph Mizzoni #68549 Pro-SE
18  Respectfully request to file the above Opposition Motion for Video
19  on his §1983 Civil Right Complaint Pursuant to 42 USC§1983.
20

21  See; Haines v. Kerner, 404 U.S. 519(1972)(Alligations of a pro-se complaint
22  are held to less standards then formal pleadings drafted by lawyers.)
23
24
25
26
27
28                      -1-

STATEMENT OF FACTS IN SUPPORT I

1. (FACT 1) Plaintiff filed his First Amended Complaint on the 29 day of
2. March, 2016.

3.

4. (FACT 2) On this First Amended Complaint plaintiff requested Vidio on
5. (Page 3 B. NATURE OF THE CASE TO Page 3C) through out, and at
6. the disciplenary hearing on 5-1-15 as stated in the §4983 Complaint.

7.

8. (FACT 3) On this First Amended Complaint (Attached EXHIBITS) is a
9. INMATE REQUEST FORM dated the 5 day of April, 2015 TO WARDEN
10. Ms Walsh. Me asking for and why the Vidio and Witnesses are relevant
11. and told her to preserve the Vidio Inside Unit 5 to 7-A-38. Ms Walsh
12. Warden response: "ADHERE TO THE PROCESS!" for Vidio/Witnesses/Pictures."

13.

14. (FACT 4) ORDER Filed 9-2-16 (Document 10) on (Page 4 LINE 6-12); (PAGE 4
15. LINE 19-20); (PAGE 5 LINE 13-20); (Page 6 LINE 25) all in which show
16. the Court recognized the Evidence, Witnesses, and in this case Vidio.

17.

18. (FACT 5) Plaintiff filed a "MOTION TO RESPOND TO DEFENDANTS
19. NOTICE OF ACCEPTANCE OF SERVICE" dated the 9 day of January, 2017.
20. Asking for Defendant to Accept Service of Process Under 4(d) on defendant
21. C. Smith, because the AG Erin L. Albright refused to accept service as ordered
22. several times prior to this, and Never filed any Motions on the Order
23. above Doc # 10, 9-2-16 to exclude Defendant Smith from the mediation
24. Program or further follow the Order to take Smith as a Defendant
25. within (21) days for a limited appearance.

26.

27. (FACT 6) The AG Erin L. Albright filed a "OPPOSITION TO MOTION TO
28. RESPOND

STATEMENT OF FACT IN SUPPORT I                    (Continued)

1  TO DEFENDANTS NOTICE OF ACCEPTANCE OF SERVICE" dated
2  the 26 day of January, 2017. And on her response she states
3  on (Page 1 LINE 26-28) C.Smith Defendant was dismissed without
4  prejudice with leave to amend. Then she go's on to (Page 2 Line 7-17)
5  Under: II ARGUMENT Here, this Court dismissed C. Smith without prejudice
6  after reviewing Inmate Mizzoni's initial complaint (Id. at 9). This Court
7  provided Inmate Mizzoni the opportunity to amend his complaint to
8  include allegation that C. Smith personally participated in the disciplinary
9  ~~____~~ proceeding (Id at 7). Inmate Mizzoni failed to allege that
10 C.Smith personally participated in the disciplinary hearing. Since Inmate
11 Mizzoni failed to cure the deficiencies against C.Smith, C.Smith "is still"
12 dismissed from this instant action- III CONCLUSION Since C.Smith has
13 been dismissed from this instant action, Defendant respectfully request this
14 Court deny Inmate Mizzoni's Motion to Respond to Defendant's Notice of
15 Acceptance of Service"
16     This Attorney General uses case ORDER(Id. at 10) and (Id at 7)
17 and is lieing that C.Smith didn't get Ordered to be a
18 Defendant and she comits perjury Under penality USC §1746 and
19 NRS Nevada Laws which is a Felony. See; Document 10 ORDER
20 dated 9-2-16 (PAGE 6 LINE 22-25) State: (Plaintiff alleges that Smith wrote a
21 false report that resulted in a disciplinary hearing in which he did not
22 receive due process. Plaintiff "MAY PROCEED" on his Fourteen Amendment
23 due process Claim against DEFENDANTS Braman AND SMITH.)
24    Then on PAGE 7 LINE 27-28) CONCLUSION III. It is further ordered that
25 Plaintiffs Fourteenth Amendment due process claim will proceed against "DEFENDANTS"
26 SMITH and Braman.
27     Plaintiff shows his ((FACT 5) Page 2 LINE 18-25) and ((FACT 6) Page 2 LINE 27-28 TO
28 Page 3 LINE 1-26) in order

STATEMENT OF FACTS IN SUPPORT I                    (Continued)

1. to show that AG Erin Albright has already comitted perjury §1746
2. USC inorder to win her case and than has Defalt Judgment Ordered
3. against her and the Court reverses the Defalt with out any FRCP
4. Rules or Case laws to support lac of secretavver and staff and excuses
5. for C-Smith even after him being served by USM-Service. On this
6. Motion for Vidio she lies and comits perjury with the Defendants
7. under §1746 USC that theres No Vidio on 3-28-15. And plaintiff will
8. show in the rest of this opposing motion.
9.
10. (FACT 7.) On 2-9-17 Document 31 this Court Ordered a "SCHEDULING
11. ORDER FOR CIVIL RIGHTS ACTIONS FILED BY INCARCERATED
12. PRO SE PLAINTIFFS" ordering discovery by May 24, 2017.
13.
14. (FACT 8.) On March 9, 2017 AG Erin Albright files a "DEFINDANT
15. BRANNON'S RESPONSES TO PLAINTIFF'S REQUEST FOR INTERROGATORIES
16. (Set one)" on (PAGE 2 LINE 13-28) INTERROGATORY NO.5: Please state in your own
17. words that on 3-28-15 was there eye witnesses inmates and CO's and Vidio camras
18. working inside and outside Unit 5, Outside Unit 4, inside and outside Unit 8, and
19. outside Unit 7 and that as a disciplenary officer your policy to allow inmates
20. to review such evidence is done how? And if not Why?
21.    RESPONSE TO REQUEST NO.5: Objection. This discovery request seeks
22. information not relevant to the subject matter of this lawsuit and not calculated to
23. lead to the discovery of admissible evidence in violation of the collateral source
24. rule. Objection The information requested is confidential and if disclosed could
25. lead to a comprimse of prison security and safty.
26.    Not withstanding the objections and without waving them Defendants state:
27. to my Knowledge I beleive that the institutional camra system was working
28. only in Unit 5, outside                    -4-

I.

STATEMENT OF FACTS IN SUPPORT I                    (continued)

1  Unit 4, outside of Unit 8 and outside of Unit 7 on this date. However
2  the policy of the istitution is to not allow inmates to review any video
3  taken from institutional canera system due to safty and security reasons.
4  (Interrogatory Request No 1-4 are addressed to C. Smith who is not currently
5  a party to this litigation.) See; Page 3 LINE 1-15) INTERROGATORY No. 6
6  and RESPONSE TO REQUEST NO. 6 (Same questions on Video, and the Inspector
7  Generals Office should have Video to). Same answers by AG/Defendants. The AG and
8  Defendant had from 3-28-15 to 3 years per AR 405 (NDOC) to retain Force Video See; AR 405 (NDOC) P96 of 18 B. C.
9  (FACT 9) On March 31, 2017 AG Erin Albright files a "DEFENDANT BRANNEN'S
10  RESPONSES TO PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS" and on (Page 2 LINE 28)
11  [2] ADMISSION REQUEST No. 1-10 are addressed to C. Smith who is not currently a
12  party to this litigation.) And on (Page 2-3) Plaintiff ask on ADMISSION No. 13
13  for Video to determine alligations on C. Smith in the area of that part to
14  lead to disciplenary. And on RESPONSE TO REQUEST FOR ADMISSION No. 13:
15  Plaintiff requested rotunda video Unit 5, and Brannen answer there was no
16  Video footage of the insident to review. Therefore, there was no way I could
17  assist with this request. (This shows Defendant Brannen did look at all video
18  that plaintiff requested on Unit 5 A,B,C wings, Unit 4, Unit 7, Unit 8, but admits
19  he had no video for the incident "only" with C. Smith in Unit 5 rotunda the
20  only place where theres no canras in the whole prison.)   Also if the Cant
21  looks at ADMISSION No. 15 then RESPONSE TO REQUEST FOR ADMISSION No. 15:
22  the viewing of Institutional canera system was not available. Inmates are not
23  generally allowed to view the Istitutional canera system as it is a safty and
24  Security concern. (Here the Defendant admits video on the video plaintiff
25  request, but violater plantiffs Due process rights to see Video because the insident
26  as a whole is from 8 PM to 9:30 PM and from what happen in Unit 5 all the
27  way to Unit 8 to Unit 7 which was assalt on plaintiff and/or Insident Report should all
28  be Video taped See; NDoc AR 405        -5-

I.

STATEMENT OF FACTS IN SUPPORT I                                    (Continued)

1 | Pg 6 of 18  B. (a) (b) (c)   Pg 7 of 18 (d) and C. Wardens.

2 |

3 | (FACT 10.) Plaintiff did File his "REQUEST TO DEFENDANTS FOR DISCOVERY
4 | CONFERENCE (UNDER FRCP 37(a)(1) LETTER" dated March 21, 2017 and on (pg-1)
5 | plaintiff addresses Defendants Brannan and Smith. And on (pg-2: LINE 16-27) Plaintiff
6 | request Any /ALL Video Tape and specifies for what and where.

7 |

8 | (FACT 11.) "ORDER" dated 4-17-17 (Document 47) (Page-4- Bottom page) states
9 |    ' The court is not prejudging the issue, but on First blush it appears that
10 | the video evidence (which Plaintiff claims has been admitted to exist) is central
11 | to this case, and Plaintiff should be permitted to review that evidence in a
12 | manner which alleviates any safty and security concerns espoused in Brannans
13 | objections.

14 |

15 | (FACT 12) On April 26, 2017 plaintiff Filed a "MOTION SEEKING PERMISSION
16 | TO OBTAIN BY COURT ORDER VIDIO TAPE EVIDENCE FOR THE NIGHT OF
17 | 3-28-15 IN/OUT UNITS 5, 4, 8, 7 AT NNCC PRISON UNDER LOCAL RULE
18 | 26-7 FOR §1983, BETWEEN 8 PM AND 9:30 PM." Plaintiff specifies each
19 | detail and reasons why the Vidio is needed as evidence in the Units Asked
20 | for and, none is a security or safty risk, its all open stationary Camras
21 | and hand held Vidio camras inwhich in Unit 5 rotunda and Unit 4 rotunda the
* 22 | monators are visable to all inmates day and night to see all angles of
23 | Vidio footage inside and out Units on the Monator in Unit Bubbles. See; AR 405 pg (video)
24 |   6 of 18 and 7of 18  B. and C. Must keep Vidio 3years and Vidio's on Force Used.
25 | (FACT 13) AG ERIN Albright Files a " DEFENDANT BRANNANS ~~XXXXX~~
26 | RESPONSE TO PLAINTIFFS REQUEST FOR PRODUCTION OF DOCUMENTS [set one]
27 | dated the 11 day of April 2017., and on (PAGE 4 LINE 12-28) ~~XXXXXXX~~
28 | shows plaintiff asked for          -6-

_I._

STATEMENT OF FACTS IN SUPPORT I                    (Continued)

1  the Vidio at point on REQUEST No.4. and on RESPONSE TO REQUEST
2  No.4: (Defendant objects to Request No.4 on the ground that appears to be
3  made for improper purposes given that 1) Plaintiff is an inmate and Defendant is a
4  prison official; and 2) the request has only slight or marginal relevance to
5  Plaintiffs Claims.) It is relevant, it shows punishment on Vidio before plaintiff
6  was given his 5-1-15 Disciplenary Hearing, and it shows that vidio egsist and
7  should of been seen by Plaintiff at his Disciplenary and at least now. The
8  AG says there's no Vidio, which a Violation of NRCC Policys. See; AR 405 Pg 6 of 18
9  to 7 of 18 B. and C. must stoe Vidio when force is used for 3 years.
10
11  (FACT 14) Defendants File a "OPPOSITION I TO MOTIONS SEEKING PERMISSION TO
12  OBTAIN VIDEOTAPE EVIDENCE FOR THE NIGHT OF 3-28-15 IN/OUT UNITS
13  5, 4, 8, 7 AT NNCC PRISON UNDER LOCAL RULE 26-7(B) FOR §1983,
14  BETWEEN 8PM AND 9 30PM (SIC) (ECF No. 50)" on the 30 day of May, 2017.
15  On Erin Albrights response for the Defendants it states on (PAGE 1-LINE 23-28)
16  that Plaintiff ask for Vidio on March 28, 2015 of housing Units 4, 5, 7, and 8
17  at NNCC. Then from (PAGE 1 LINE 28 TO PAGE 2 LINE 1-7) states: Brannan admits
18  to his Knowledge on March 28, 2015 the institutional camra system was working
19  in housing Unit 5, outside Unit 4, outside housing 7, and outside housing Unit 8. (Id)
20  He also responded that the policy of the institution does not allow inmates
21  to review any vidoe from the institutional Camra System due to safty and security
22  Concerns. (Id.)  See; (FACT 10) (PAGE 6 LINE 3-6) of this Motion, to show plaintiff
23  Filed a Request under FRCP 37(a) 1 for Discovery Conference. She never had one
24  or set one up.

## II ARGUMENT

26   Plaintiff shows good cause why Vidion is relivant evidence on his (facts) On
27  the Defendants argument (PAGE 2 LINE 1-5) on 3-28-15 No Vidio egsist in the rotunda
28  of housing Unit 5, an area that does -7-

## ARGUMENT                                          (Continued)

1  not have video coverage; therefore, no video footage of the incident

2  exists. (ECF N062 in 3:15-CV-00313 At 5-6). On (PAGE 2 LINE 6-28) states

3    In preparation for the June 15, 2017 Hearing for Video 3-28-15 in

4  Unit 5 ABC wings inside and Unit 5 outside, Unit 9 outside, IN/OUT UNIT 8, OUTSIDE UNIT

5  7 Between 8PM and 9:30PM at NNCC (Exh A). For the the Clients to date

6  check Video Files regarding the existence of Video footage and they state

7  does not depict the incident involving inmate Mizzoni. Then it goes on to

8  state; The only time a video recording from camera in housing units 4, 5, 7 and 8 is

9  indefinitely kept by the NDOC is if there is an incident (ie, riot, assault against

10  a correctional officer, assault against an inmate) that occurred and the incident was

11  recorded on Video (Id.) IF that occurs, the NDOC will make a copy of the

12  Video recording and retain the recording for its records (Id.) Since the March 28, 2015

13  incident occurred in an area where there is no video camera coverage, and there is no

14  recorded Video footage available to provide Mizzoni. The video footage from

15  the date has been recorded over as the Video footage is on a recording loop and

16  is not indefinitely retained by NDOC or NDOC.

17                    III PLAINTIFFS ARGUMENT

18    Plaintiff states there was a incident on 3-28-15 in rotunda of Unit 5 by

19  Unit Bubble door. The incident continued from Unit 5 to Unit 8 to Unit 7 as

20  stated by allmost all officers involved: See; MIZZONI 313: DEF EXH A-001

21  to 010  Officers Reports. CASE 3:15-CV-00313-MMD-VPC. This was a incident

22  that started in Unit 5 rotunda by plaintiff being assalted and continued to be

23  assalted to Unit 8 as stated by plaintiff on his §1983 First Amended

24  Complaint. And because this was written up as a False report by C. Smith

25  Stating plaintiff hit him the whole incident and forced movement from Unit 5 to

26  Unit 8 and then Unit 7 is required to have Video Survillance. See; NDOC AR 405

27  B. (a) pg 6 of 18 also (b) and (C) and pg 7 of 18 (d.) IF the use of force is still occurring

28  when the staff Video recorder arrives

## III.

### PLAINTIFFS ARGUMENT                    (Continued)

1  the incidents shall be recorded to capture the unfolding events while
2  waiting for a response team, even if through windows, fences, bars,
3  or even if far away, etc. This is Spontaneous use of force. see AR405
4  pg 6 of 18 (a) Where force was used spontaneously, regardless of injuries reported
5  contemporaneous with the event, the area supervisor/incident commander "shall"
6  immediately review, if available, any unit video surveillance that may have
7  captured the use of force.

8           (b) If the use of force was captured on video, from any "ANY ANGLE"
9  on camera, the area supervisor/incident commander "shall" be responsible for
10  preserving that recording in a manner and location that is easily retrievable in the
11  event review is needed. The Video "MUST" be maintained for no less than
12  (3) three years from the date force was used.

13           (c) If no cameras were operational in that unit or no cameras
14  captured the use of force, the area supervisor/incident commander "SHALL"
15  make a notice of same in the Use of Force Incident Report-
16  pg 7 of 18 (d) In addition to and apart from "ANY" Surveillance footage from
17  stationary cameras that may exist, video footage "SHALL" also Be Recorded
18  via a hand-held camera as follows:
19           • As soon as the shift supervisor becomes aware that force is being
20  used or has been used, a staff member "shall" be directed to immediately
21  obtain a Handheld Video camera and "SHALL" be ordered to the scene where
22  force has been used.
23           • Immediately upon arrival to the scene, the staff video recorder "SHALL"
24  begin recording, noting the time and date the recording begins and identify himself/
25  herself as video recorder. The staff video recorder "SHALL" continue to take footage
26  until the area supervisor/incident commander decides the incident is over and
27  instructs the staff video recorder to cease recording.
28

## III.

### PLAINTIFFS ARGUMENT                    (continued)

1 • For any breaks in recording, the recording staff member must sign back
2 on with the date, time and reason for the break in recording.
3    Pg. 7 of 18 C. The Warden / Division head "SHALL" ensure that Use of
4 Force "Operational Procedures" are specific on the process for the recording of
5 Use of Force incidents and storage of the Video recordings. See; Attached
6 EXHIBIT-A. INMATE REQUEST FORM for Video, Pictures Witnesses dated
7 4-5-15 to Warden Walsh, Answer by her "ADHERE TO THE PROCESS".
8    See; ATTACHED EXHIBIT-B. ORDER dated the 16 day of Febury 2010
9 CASE CF-0708024  7th/Jud/Dist/Cast/New/Ely (PAGE 1-2) on Video in
10 this case on excessive force allowed on two incidents by a Judge, Inmates
11 Can View Video. See; Attached EXHIBIT-C (Page 8 LINE 1-11) on "ORDER
12 GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT
13 OF HABIAS CORPUS, Case # HC-0806011, Dept. No.1, dated 9-24-2008.
14 See; Young V. Kann. 926 F. 2d 1396, 1400-2 (2nd Cir. 1991) (inmate Charged with
15 writing a threatening letter should have been permitted to see the letter,
16 and the hearing officer should have read the letter rather than relying on a
17 description of it in the disciplinary report.) See also; Young v Lynch, 846 F.2d
18 960, 963 (4th Cir. 1988) (Due process may require production of evidence
19 When it ~~————~~ is the dispositive item of proof, its critical to the inmates
20 defense; it is in the custody of prison officials and it could be produced
21 without impairing institutional concerns.)
22    The Defendants argument does not past muster the "whole" Incident was
23 Spontaneous Use of force pre AR405 and all the Officers admit it from Unit 5
24 to Unit 7 what force they used including the escort from 5 to 8 to Unit 7 is
25 all spontaneous force and Video Handheld and Stationary Cameras are required and
26 to be preserved 3 years. See; Defendants Exhibits C DEF-EXC-001 Staff Name
27 SHERMAN FRANK, he admits Video in Unit 5. A,B-C wings and is spost to have
28 the Video Plaintiff requested and

III.

PLAINTIFFS ARGUMENT                              (continued)

1 | this Officer is the Shift Commander, on CASE# 3:15-CV-00313-MMD-VPC.

2 | See; Marquez V Mann, 192 A.D. 2d 100, 600 N.Y. S. 2d 285 (3rd Dept. 1993)

3 | (Failure of hearing officer to allow inmate to review Video Tape of incident in

4 | question at disciplinary hearing denied inmate his Constitutional right to answer the

5 | evidence therefore, the record of the incident should be expunged) See; Wolff v

6 | McDonnell, 418 U.S. 539, 94 S. Ct. 2963, 41 L.Ed. 2d 935 (1978).

7 |    See; Northern Nevada Association of Injured Workers V. Nevada State Indus.

8 | Insurance System (Nev. 1991) 807 P. 2d 728, 107 Nev. 108; Says: "State Agencies" "must"

9 | follow their own Rules, Failure to Follow a Non-Discretionary Rule Constitutes a

10 | Non-Discretionary Act". (See Also; NRS 41.031, And 41.032, And 616.50057)

11 | Where NDOC AR, OP's, IP say that Something has to be done, ie- Forced movements

12 | and/or Extraction must be Video taped, The Absence of a Video (Because one wasn't

13 | taken or because it was Lost): <1> Violates a non-discretionary Policy; <2> Constitutes a

14 | Non-Discretionary Act; <3> Constitutes Distruction of Evidence, (Spoliation)

15 |    See; Kimberly Bass-Davis v. Katai Davis (Nev. 2006) 134 P. 3d 103 122 Nev. 442;

16 | Says: Destruction of Evidence that is not willful still Evidence would have been

17 | unfavorable to the Destroyer "Destruction Evidence that is willfull warrants Jury

18 | Instruction for Presumption that destroyed evidence would have been unfavorable to the

19 | destroyer" The difference between and inference and a presumption is that while the

20 | Jury "Must" accept a presumption as true "it does not have to accept an inference as true".

21 |    Where the destroyer destruction of evidence violates a written policy Said Destruction

22 | is deemed wilful". NRS 41.031 Says that: "The State of Nevada, it's Agencies, and

23 | their employees Waive there immunity from being sued in State Court for

24 | Non-Discretionary acts" (AlsoSee; NRS1.037). Where lawsuit is against NDOC

25 | Employee, destruction of evidence by "any" other NDOC Employee is still held against

26 | law suit party under the "Law of Agency" See; NDOC Grievance # 2016-29-98671

27 | on case# 3:15-CV-00313-MMD-VPC (Pg 1-3) Dated 4-15-15 8pm Request for all video storeing

28 | and hand held, Pictures, Witnesses.        -10-

## IV.

## CONCLUSION

1   Where fore Plantiffs shows good cause why he should receive all
2   the Vidio "Stationary and Hardheld For this case and case # 3:15-CV-00313-
3   MMD-VPC to show "Facts" to the Cart, Jury, and Defendants how he was
4   punished before Due Proces of law under the 14th Amend USCA, and other related
5   Facts to use as evidence in a Jury trial as he ask for and proves
6   with his "Points and Authorty" The Cart Judge on 6-15-17 said at that
7   telephonic Hearing to the AG Erin Albright to produce the Vidio at a minimum
8   in closed camra, because she states the Vidio was a security risk on inmates
9   seeing blind spots ect-. Nothing about the Vidio being Destroyed, misplaced, etc.,
10  the Defendant Brannon had time to see all the Vidio and he admits it
11  more than once and Now theres No Vidio? This is Destruction of Evidence
12  to favor the Defendants and hide the truth from me, the Cart and a
13  Jury. This is a felony to obstruction of Justice, and it should be told
14  to a Jury as that. Plantiff request all the Vidio he ask for. First the Defalt
15  on C Smith and now No vidio. (Attached EXHIBITS A-B-C)
16
17                                              RESPECTFULLY SUBMITTED
18                                              this 27, day of JUNE 2017
19
20                                              BY Joseph Marioni
21                                              JOSEPH MARIONI
22                                              #68549
23
24
25
26
27
28                              -11-

AFFEDAVET OF JOSEPH MEZZONE #68549 IN PRO-SE

1  STATE OF NEVADA )

2                    ; SS

3  COUNTY OF CLARK )

4

5    (1) Plaintiff sworn in support of the Motion duly and says;

6

7  (2) Plaintiff in Pro se Joseph Mizzone #68549 in support of the

8  affidavit here for " MOTION TO RESPOND TO NOTICE AVAILABILITY

9  OF VIDEO MARCH 28, 2015 AND OPPOSE" on his §1983 IN THE

10  UNITED STATES DISTRICT COURT DISTRICT OF NEVADA and does so in

11  the truth under penalty and perjury §1746 USC 28 / NRS LAWS.

12

13

14                          RESPECTFULLY SUBMITTED

15                          this 27 day of June 2017

16

17                          BY: Joseph M.

18                          JOSEPH MIZZONE

19                          #68549

20

21

22

23

24

25

26

27

28                    -12-

**CERTIFICATE OF SERVICE BY MAILING**

I, JOSEPH MITTON #65549 , hereby certify, pursuant to NRCP 5(b), that on this 27

day of JUNE , 2017, I mailed a true and correct copy of the foregoing, " MOTION TO

RESPOND TO NOTICE AVAILABILITY OF VIDEO MARCH 28, 2015 AND ORDER "

by depositing it in the High Desert State Prison, Legal Library, First-Class Postage, fully prepaid,

addressed as follows:

1) Clerk US. DISTRICT COURT
District of Nevada
400 S. VIRGINIA Street Room 301
Reno NV. 89501

2) Office AG/Nev
MS Albright
100 N. Carson Street
Reno, NV 89701-4717

3) Plaintiff ACCESS
H.D.S.P
PO Box 650
Indian Springs, NV. 89018

CC: FILE

DATED: this 27 day of JUNE , 20 17 .

Joseph Mitton #65549
In Propria Personam
Post Office box 650 [HDSP]
Indian Springs, Nevada 89018
IN FORMA PAUPERIS:

EXHIBIT — A-

EXHIBIT —A-

**INMATE REQUEST FORM**

| 1.) INMATE NAME | DOC # | 2.) HOUSING UNIT | 3.) DATE |
|---|---|---|---|
| Joseph Mizzoni | 68549 | 7-B-62 | 4-5-15 |

4.) **REQUEST FORM TO:** (CHECK BOX)

___ CASEWORKER    ___ MEDICAL    ___ MENTAL HEALTH    ___ CANTEEN

___ EDUCATION    ___ VISITING    ___ LAW LIBRARY    ___ DENTAL

___ LAUNDRY    ___ PROPERTY ROOM    ___ SHIFT COMMAND

✔ OTHER   WARDEN MS. WALSH FOR MY lawyer and Court

5.) **NAME OF INDIVIDUAL TO CONTACT:** MS WALSH (Please Retain all Video/Still pictures)

6.) **REQUEST:** ( PRINT BELOW) MAM, I am in 7-B-62 I went to a Hearing on 4-4-15 and Recevied my Notice of charges and was read everything in C/o santhi Versing Unit 5 on 3-28-15 he said he ask Inmates to lock it up and they did, then he said he ordered "several" "Inmates" to get back in because his rotunda was full of other inmates. AT the hearing I requested those inmates in the rotunda and around myself and C/o Smith Names on Affidavits to or any other Inmates version of events to be at my disciplinary. Also please request all video/still pictures from inside Unit 5 to 7-A-38 on 3-28-15 inorder to Confront witness and evidence with charges against me man. Thank you

7.) **INMATE SIGNATURE** Joseph mizz    DOC # 68549

8.) **RECEIVING STAFF SIGNATURE** _____    DATE _____

9.) **RESPONSE TO INMATE**

Adhere to the process

10.) **RESPONDING STAFF SIGNATURE** RW    DATE 4/11

DOC – 3012 (REV. 7/01)

EXHIBIT - B -

EXHIBIT - B -

EXHIBIT B

⟨2⟩

⟨3-5-07⟩⟨1⟩
11-6-07

VIDEO AND DISCIPLENARY TAPE 4-3-05
AND ALL MEDICAL RECORDS ⟨3⟩

2-18-10

**1** CASE NO. CF-0708024

**2** DEPT. 2

FILED

2010 FEB 18 PM 4:06

WHITE PINE CO. CLERK

_signature_

DEPUTY

**4**           IN THE SEVENTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA

**5**                    IN AND FOR THE COUNTY OF WHITE PINE

**6**                                    * * *

**7** JOSEPH L. MIZZONI,                    )
                                          )
**8**                    Plaintiff,        )
                                          )
**9**                                      )
                                          )
**10**          V.                         )          ORDER
                                          )
**11**                                     )
   NDOC WARDEN McDANIEL, et. al.,         )
**12**                                     )
                                          )
**13**                    Defendants       )

**14**

**15**           Plaintiff Joseph L. Mizzoni filed his Motion Seeking Permission to Object to Joint

**16** Conference Report and Obtain Court Order Medical and Video CD-Rom and Reports on Incidents of

**17** all Excessive Force.  Defendants have objected on the basis of the administrative regulations which

**18** govern Ely State Prison.

**19**           Plaintiff's motion to object to the Joint Case Conference Report is denied.  Each party

**20** is required to set forth its list of exhibits and witnesses in the Joint Case Conference Report, whether

**21** or not the opposing side agrees.  The decision of whether the exhibits will be admitted at trial and

**22** whether the witnesses will be allowed to testify is reserved for either pretrial motions, pretrial

**23** conferences or for trial, and is not appropriate at this time.

**24**           This court will not interfere with the administration or the administrative regulations

**25** governing Ely State Prison and order the production to plaintiff of items not allowed under Prison

**26** regulations.  However, the items that plaintiff has asked to be produced are relevant or can lead to

**27** relevant material in this case.  Plaintiff has asked for the release of his medical records to this court

**28**

for trial.  Therefore, defendants are ordered to produce to this court for in camera inspection:

1. All medical records pertaining to the injuries and treatment of plaintiff resulting from the incidents of March 5, 2007 and November 6, 2007;

2. Any and all recordings of the incidents of March 5, 2007 and November 6, 2007 whether on CD-ROM or in any other form; and

3. Any recording of the disciplinary hearing held on April 3, 2007.

IT IS SO ORDERED.

Dated this 16th day of February, 2010.

MIRIAM SHEARING
SENIOR JUDGE

1       The trial will start on November 9, 2010 and continue Tuesdays through Fridays until

2   concluded or by February 19, 2010.

3       IT IS SO ORDERED.

4           Dated this 16th day of February, 2010.

5

6   

7   MIRIAM SHEARING
    SENIOR JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT -C-

EXHIBIT -C-

FILED

2008 SEP 24 PM 2:47

WHITE PINE COUNTY CLERK
BY _K Manzoni_
DEPUTY

Case No. HC-0806011

Dept. No. 1

IN THE SEVENTH JUDICIAL DISTRICT COURT OF THE STATE OF

NEVADA, IN AND FOR THE COUNTY OF WHITE PINE

* * * * *

JOSEPH L. MIZZONI,

                Petitioner,

      vs.

WARDEN, MR. McDANIEL,

                Respondent.

_____/

ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR WRIT
OF HABEAS CORPUS

## FACTUAL AND PROCEDURAL HISTORY

On June 30, 2008, Joseph L. Mizzoni (Petitioner), an inmate at Ely State Prison, filed a Petition for Writ of Habeas Corpus. Petitioner claims his 14th Amendment right to due process was violated in four incidents occurring between March 5, 2007 and November 6, 2007, and asks the Court to expunge the disciplinary sanctions from his record. A Motion to Dismiss and Answer was filed on August 15, 2008. The Court has reviewed the file and finds that no further briefing or oral argument is necessary.

A. **Incident One**

According to the Notice of Charges, on March 5, 2007, Petitioner was present at an interview with Correctional Caseworker Specialist Trainee Large wherein Petitioner became


(EXHIBIT C)

(EXHIBIT C

SEVENTH JUDICIAL DISTRICT COURT
STEVE L. DOBRESCU
DISTRICT JUDGE
DEPARTMENT I
WHITE PINE, LINCOLN AND EUREKA COUNTIES
STATE OF NEVADA

1   agitated and verbally abusive.  After the meeting, Petitioner threw himself onto one of the

2   officers escorting him back to his cell and was forcibly restrained.  Petitioner was restrained on

3   the floor and C.E.R.T. officers were called to escort Petitioner back to his cell.  Petitioner does

4   not dispute these facts, however, the report states that medical staff was called and Petitioner

5   states he was denied medical attention and excessive force was used to restrain him.

6
7       Petitioner was charged with MJ3 (battery), MJ28 (organizing, encouraging or

8   participating in a work stoppage or other disruptive offense), and G18 (delaying, hindering or

9   interfering with a correctional employee in the performance of his duties).  At the Disciplinary

10  Hearing Petitioner was found guilty of all three charges and was sanctioned and forfeited 180

11  days credit, received 365 days of disciplinary segregation, and lost 30 days of canteen privileges.

12  **B.      Incident Two**

13      According to the Notice of Charges (NOC), on August 20, 2007, after being escorted

14  back to his cell, and while Petitioner's restraints were being removed, Petitioner spat through the

15  food slot at Officers Sommervold and Ator, hitting both of them.  Petitioner was charged with

16  MJ3 (battery), and MJ28 (organizing, encouraging or participating in a work stoppage or other

17
18  disruptive offense).  The facts are disputed as to whether Petitioner refused to attend the

19  Disciplinary Hearing or was not permitted to attend.  Petitioner also disputes the sanctions

20  charges because he requested and was denied the right to put on evidence in his defense.  At the

21  hearing, he was found guilty and sanctioned 12 days of disciplinary detention, 365 days of

22
23  disciplinary segregation and forfeited 149 days of statutory time.

24  **C.      Incident Three**

25      According to the NOC, on September 30, 2007, Petitioner refused his meal tray and

26                                                                                                  2


(EXHIBIT C

became agitated. He propelled an unknown liquid onto the Tier and his water was shut off as a result. While the officer cleaned up the liquid, Petitioner again propelled an unknown liquid, striking the officer. Petitioner does not dispute these facts. Petitioner was charged with G18 (delaying, hindering or interfering with a correctional employee in the performance of his duties), MJ28 (organizing, encouraging or participating in a work stoppage or other disruptive offense), and MJ40 (propelling). Because of these charges, Petitioner was sanctioned and forfeited 182 days of credit.

## D.    Incident Four

According to the NOC, on November 5, 2007, Petitioner became disruptive in the recreation yard by kicking at the plexi-glass, yelling obscenities at staff and making other statements and gestures. At 12:05am on November 6, 2007, Petitioner complied with orders to be restrained and escorted from the recreation yard. Petitioner complied with orders for a body search, but became verbally abusive. While being escorted back to his cell from the showers where the search took place, Petitioner began yelling and twisting away from officers. He also tried to pull away from officers and was placed on the floor. After being examined by medical staff, Petitioner was returned to his cell where he attempted to pull away from officers trying to remove his wrist restraints through the food slot. He further yelled at staff, finally complying and the restraints were removed. Petitioner disputes these facts, as he requested videotaped surveillance records be admitted to the hearing.

Petitioner was charged with G9 (abusive language), G14 (failure to follow rules and regulations), and MJ25 (threats). The Disciplinary Hearing for these charges was held on December 5, 2007, where he was found guilty and sanctioned 180 days disciplinary segregation

3


(EXHIBIT C

and 90 days loss of yard privileges.

## DISCUSSION

While prisoners do not leave all their constitutional rights at the prison gate, these rights are necessarily limited by their lawful incarceration.[1]  As a result, Due Process requirements in the prison setting are lessened.[2]  "The requirements of Due Process are flexible and depend on a balancing of interests affected by the relevant government action."[3]  Therefore, "in identifying the safeguards required by Due Process, the Court has recognized the legitimate institutional needs of assuring the safety of inmates and prisoners, avoiding burdensome administrative requirements that might be susceptible to manipulation, and preserving the disciplinary process as a means of rehabilitation."[4]

[DUE PROCESS]

When a prison disciplinary hearing results in the loss of statutory good time credits, minimal Due Process rights entitle a prisoner to:  (1) advance written notice of the charges, (2) a qualified opportunity to call witnesses and present documentary evidence, (3) a written statement by the factfinder of evidence relied upon, and (4) a sufficiently impartial factfinder.[5]  In addition, the disciplinary hearing officer's decision must be supported by some evidence.[6]  While there are due process rights applicable to statutory good time, disciplinary segregation, is a condition of confinement and does not have an associated liberty interest.[7]

The court will consider these incidents in order:

A.   March 5, 2007

1 *Sandin v. Conner*, 515 U.S. 472, 431 (1995).
2 *Superintendent v. Hill*, 472 U.S. 445, 454–55 (1985).
3 *Id.*
4 *Id.*
5 *Id.*; *Wolff v. McDonnell*, 418 U.S. 539, 563–69 (1974).
6 472 U.S. at 454.
7 515 U.S. at 431.  (SANDIN)

SEVENTH JUDICIAL DISTRICT COURT
STEVE L. DOBRESCU
DISTRICT JUDGE
DEPARTMENT I
WHITE PINE, LINCOLN AND EUREKA COUNTIES
STATE OF NEVADA

4

(EXHIBIT C

(EXHIBIT D C

SEVENTH JUDICIAL DISTRICT COURT
STEVE L. DOBRESCU
DISTRICT JUDGE
DEPARTMENT I
WHITE PINE, LINCOLN AND EUREKA COUNTIES
STATE OF NEVADA

1    Petitioner claims his due process rights were violated because Lt. Jones answered the

2    emergency grievance and then later conducted the disciplinary hearing.  Neither Petitioner nor

3    the State has presented a copy of the emergency grievance Petitioner claims to have filed,

4    however the State does not deny that Lt. Jones investigated the grievance.

5    As stated in *Wolff*, the factfinder is required to be "sufficiently impartial."[8]  Additionally,

6    AR 707.1(2)(A)(8)(c) states that "[a]ll supervisors involved in the disciplinary process should be

7    impartial in that they . . . [a]re not also the Preliminary Hearing Officer for the same offense."

8    Lt. Jones' signature appears on the NOC as the supervisor on duty for March 5, 2007.  He also

9    signed the Summary of Disciplinary Hearing as the Disciplinary Hearing Officer.  Because

10   Respondent does not dispute the role played by Lt. Jones in this incident, acting as both

11   investigator on the grievance and disciplinary hearing officer, relief should be granted.[9]

12   B.    August 20, 2007

13   Petitioner challenges the sanctions resulting from this incident based on:  (1) partiality of

14   guards escorting him to the hearing, (2) being denied the ability to present evidence in his

15   defense at the hearing, and (3) not being provided a copy of the findings of the disciplinary

16   hearing so that he could file an appeal.

17        1.    Partiality of Guards

18   Petitioner challenges these sanctions because one of the guards escorting him to the

19   hearing, Officer Ator, was involved in the incident.  Petitioner fails to state why Officer Ator's

20   escort to the disciplinary hearing would violate AR 707.1(2)(A)(8)(c-d).  Officer Ator was not

21   the hearing officer for this offense; Lt. Falge in fact presided over the hearing.  Therefore, relief

_____

8  418 U.S. at 571.
9 *Id.*


(EXHIBIT D C

should be denied as to this incident.

[EVIDENCE]

2.  Right to Present Evidence at Disciplinary Hearing

As stated in AR 707.1(2)(B)(3)(e)(6), "[i]f the inmate pleads 'not guilty,' they shall have the opportunity to make a statement and present evidence to the Disciplinary Hearing Officer." In *Wolff*, the United States Supreme Court held that an "inmate facing disciplinary proceedings should be allowed to . . . present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."[10] Based on *Wolff*, Petitioner should have been afforded the opportunity to present the towel as evidence, however, Petitioner cites no law providing him a right to have DNA evidence processed and submitted in a disciplinary proceeding.

As stated in *Hill*, "the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits."[11] This standard is met when "there [is] some evidence from which the conclusion of the administrative tribunal could be deduced . . . ."[12] This need not be accomplished by "examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence."[13] Rather, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."[14] While Petitioner was not permitted to present evidence that there was an alternate source of the propelled fluid, the incident happened when Petitioner was being returned to his cell and there does not appear to have been any other inmate

10 418 U.S. at 564.
11 472 U.S. at 455.
12 *United States ex rel. Vajtauer* v. *Commissioner of Immigration*, 273 U.S. 103, 106 (1927).
13 472 U.S. at 455.
14 *Id.*, at 456.




(EXHIBIT ...C

(EXHIBIT C

SEVENTH JUDICIAL DISTRICT COURT
STEVE L. DOBRESCU
DISTRICT JUDGE
DEPARTMENT I
WHITE PINE, LINCOLN AND EUREKA COUNTIES
STATE OF NEVADA

1   in the vicinity.  Petitioner does not otherwise show how the towel would have been relevant or

2   exculpatory.  The Court finds that, in relying on the statement of Officer Sommervold, the

3   disciplinary hearing officer's decision was based on the some standard of evidence and no relief

4   should be granted because Petitioner was not allowed to present the towel.

5          3.       Copy of Findings of Disciplinary Hearing

6          According to AR 707.1(2)(B)(3)(e)(12)(d), "[a]t the conclusion of the hearing, the inmate

7

8   shall receive a written statement of the findings, including the evidence relied upon and the

9   sanctions imposed."  At the disciplinary hearing held on September 21, 2007, Mizzoni was found

10  guilty of the charges but was not given a copy of the findings with which to file an appeal of the

11  ruling.  Respondent does not address this in their Answer.  According to AR

12  707.1(2)((B)(3)(e)(14)(a), appeals of Disciplinary Hearings shall be filed within 15 days of the

13  conclusion of the disciplinary hearing.  Because Petitioner was denied a copy of the findings

14  with which to file an appeal, relief should be granted for this incident.

15  C.    October 16, 2007

16         Petitioner, for unstated reasons, was not permitted to attend the disciplinary hearing

17

18  associated with this incident.  As a result, he challenges the imposed sanction of 182 days of

19  credit, 180 days of disciplinary segregation and loss of privileges.  The State argues that, as in

20  *Sandin v. Conner*, disciplinary segregation is a condition of confinement and does not have an

21  associated liberty interest.[15]  Therefore, Petitioner is not entitled to relief for the 180 days of

22  disciplinary segregation.  However, Petitioner is entitled to reinstatement of the 182 days of

23

24  credit.

25  ────────────────

    15 515 U.S. 472, 431 (1995).

26                                                                                          7.



(EXHIBIT C

D.    November 6, 2007

Petitioner challenges the sanction of 180 disciplinary segregation, 90 days loss of exercise yard privileges and other privileges relating to this incident because he was not permitted to review videotape of the incident.  Petitioner relies on a New York case, *Marquez v. Mann*, where the Court held that the failure of the hearing officer to permit an accused to review videotape relied upon during the hearing resulted in petitioner's loss of "his regulatory right to reply to the evidence against him."[16]  Pursuant to this case, Petitioner should have been able to view the video tape.  However, disciplinary segregation is a condition of confinement and does not have an associated liberty interest.[17]  Therefore, Petitioner is not entitled to relief for this incident.

Good cause appearing,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED IN PART AND DENIED IN PART** as follows:

As to Incident One, relief is granted and 180 days of credit are reinstated.

As to Incident Two, relief is granted and 149 days of credit are reinstated.

As to Incident Three, relief is granted and 182 days of credit reinstated.

As to Incident Four, no relief granted.

Dated this 24TH day of September 2008.

DISTRICT COURT JUDGE

---

16 *Marquez v. Mann*, 192 A.D. 2d 100, 103 (1993 N.Y. App. Div.).
17 515 U.S. 472, 431 (1995).

SEVENTH JUDICIAL DISTRICT COURT
STEVE L. DOBRESCU
DISTRICT JUDGE
DEPARTMENT I
WHITE PINE, LINCOLN AND EUREKA COUNTIES
STATE OF NEVADA


