1

2

3

4

5

6                          UNITED STATES DISTRICT COURT

7                                DISTRICT OF NEVADA

8
   JOSEPH L. MIZZONI,                      )        3:15-cv-00499-MMD-WGC
9                                          )
                Plaintiff,                 )        **REPORT & RECOMMENDATION**
10                                         )        **OF U.S. MAGISTRATE JUDGE**
           vs.                             )
11                                         )        Re:  ECF No. 100
   STATE OF NEVADA, *et al.*,              )
12                                         )
                Defendants.                )
13 _____)

14

15        This Report and Recommendation is made to the Honorable Miranda M. Du, United States

16 District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §

   636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.
17
          Before the court is Plaintiff's Motion Seeking Permission to File a Spoliation/Destruction of
18
   Video Tape Evidence against Defendants. (ECF No. 100.) Defendants filed a response (ECF No. 106),
19
   and Plaintiff filed a reply (ECF No. 111). The court held a hearing on the motion on September 21, 2017,
20
   and issues this Report and Recommendation that the motion be granted in part and denied in part.
21
                                        **I. BACKGROUND**
22
          Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),
23
   proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Pl.'s Am. Compl., ECF No. 7.) The
24
   events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional
25
   Center (NNCC). (*Id.*) Defendants are Ira Brannon and Christopher Smith.
26
          / / /
27
          / / /
28

In the Amended Complaint, Plaintiff alleges that he was involved in an incident on March 28, 2015, with Correctional Officer C. Smith that resulted in disciplinary charges. (ECF No. 7 at 3-4.) That incident, which allegedly involved the use of excessive force, is the subject of another lawsuit, *Mizzoni v. State of Nevada*, 3:15-cv-00313-MMD-VPC. In this action, Plaintiff avers that C. Smith wrote a false disciplinary report stating Plaintiff hit him in the temple, and a hearing was held on May 1, 2015. (*Id.* at 3, 7.) Lieutenant Brannon was the hearing officer. (*Id.*) Plaintiff pleaded not guilty and stated he did not hit Smith on March 28, 2015. (*Id.* at 3-4.) Plaintiff requested to present all witnesses to the incident, as well as any video of the incident. (*Id.*) Brannon denied his request for witnesses, with the exception of allowing Plaintiff's cellmate at the time of the incident to appear as a witness. (*Id.*) With respect to the request to present video evidence, Brannon told Plaintiff there was no video of the incident, and then that any video was for official use only. (*Id.*)

Particularly important for purposes of this motion is Plaintiff's allegation that there were inmates all around at the time of the incident, and that there is a video camera in the unit that would have captured the incident, as well as video from a hand-held video camera used by Sergeant Roberson. (*Id.*) Plaintiff avers that prior to the disciplinary hearing, he wrote to Warden Walsh and asked for all video evidence. (*Id.* at 4.)

Brannon found Plaintiff guilty of battery. (*Id.*) Plaintiff alleges that Brannon stated he was punishing Plaintiff for prior incidents as far back as eight years ago, for which Plaintiff had already been punished. (*Id.*) Plaintiff was sentenced to two years of disciplinary segregation. (*Id.* at 5.)

On screening, the court found Plaintiff stated colorable due process claims against both Brannon and Smith. (ECF No. 10 at 6.) The claim against Brannon is based on the allegations that Plaintiff was denied evidence and witnesses during his disciplinary hearing on May 1, 2015, and that Brannon punished him for prior acts for which he had already received punishment. (*Id.*) The claim against Smith is based on the allegation that Smith made a false disciplinary report, which is actionable if the inmate is not afforded procedural due process in connection with the resulting disciplinary proceedings. (*Id.*)

/ / /

/ / /

Plaintiff previously filed a motion for a court order for production of video evidence from the night of March 28, 2015. (ECF No. 50.) The court held a hearing on this motion on July 24, 2017, where Defendants maintained there was no video footage of the incident of March 28, 2015. Therefore, the court denied the motion. (See ECF No. 95 at 2.) At the hearing, Plaintiff accused Defendants of destroying the evidence. (*Id.*) The court advised Plaintiff that it could not address that topic at that time because there was no spoliation motion before the court. (*Id.*) Plaintiff has now filed his spoliation motion.

## II. LEGAL STANDARD

"Spoliation is 'the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence[,] in pending or reasonably foreseeable litigation.'" *Reinsdorf v. Skechers U.S.A. Inc.,* 296 F.R.D. 604, 626 (C.D. Cal. July 19, 2013) (alteration original) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). Thus, a party must preserve evidence it knows or should know is relevant to a claim or defense of any party. *See Reinsdorf,* 296 F.R.D. at 626-27 (citations omitted); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal. 2006) (citations omitted). This duty arises not only during litigation, but extends to that "period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011) (citation and quotation marks omitted). Once the duty to preserve takes effect, a party must "suspend any existing policies related to deleting or destroying files and preserve all relevant documents related to the litigation." *In re Napster*, 462 F.Supp.2d at 1070 (citations omitted).

There are two sources of authority under which a district court can sanction a party who has engaged in spoliation of evidence: the inherent power of the court to levy sanctions in response to abusive litigation tactics, and Federal Rule of Civil Procedure 37's provision for sanctions against a party who fails to obey an order to provide discovery. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006) (citation omitted). Here, there is not a particular discovery order being violated; therefore, the court's analysis is based on the inherent power to sanction. Specifically, the court "'has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.'" *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies,*

*Inc.*, 306 F.3d 806, 824 (9th Cir. 2002) (quoting *Glover v. BIC Corp.,* 6 F.3d 1318, 1329 (9th Cir. 1993)).

> Courts may sanction parties responsible for spoliation of evidence in three ways. First, a court can instruct the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence. Second, a court can exclude witness testimony proffered by the party responsible for destroying the evidence and based on the destroyed evidence. Finally, a court may dismiss the claim of the party responsible for destroying the evidence.

*In re Napster*, 462 F.Supp.2d at 1066 (internal citations omitted). "A party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." *Id*. (citations omitted). "District courts may impose sanctions against a party that merely had notice that the destroyed evidence was potentially relevant to litigation." *Id*. (citations omitted). The "motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *Id*. at 1066-67 (citations omitted).

The applicable standard of proof for spoliation appears to be a preponderance of the evidence. *Krause v. Nevada Mut. Ins. Co.*, No. 2:12-cv-00342-JCM-CWH, 2014 WL 496936, at * 7 (D. Nev. Feb. 6, 2014). The party seeking spoliation sanctions has the burden of establishing the elements. *Reinsdorf,* 296 F.R.D. at 626.

It is not entirely clear what sanction Plaintiff seeks as he makes reference to "all relief" as well as to a jury instruction. As the court will discuss further below, there is no specific evidence of bad faith or the "outrageous" conduct that justifies dismissal; therefore, the court does not find any type of directed verdict, dismissal or terminating sanction appropriate. *See e.g. Pettit v. Smith*, 45 F.Supp.3d 1099, 1113 (D. Ariz. 2014) (finding that case-terminating sanctions require conduct akin to bad faith); *In re Napster*, 462 F.Supp.2d at 1066 (noting that dismissal is a severe sanction warranted by "outrageous" conduct). Accordingly, the court will construe Plaintiff's motion as seeking an adverse inference instruction.

The Ninth Circuit has not set forth a standard for an adverse inference instruction, but most district courts have adopted the Second Circuit's three-part test for determining whether an adverse inference sanction is appropriate for spoliation. *See e.g., Reinsdorf,* 296 F.R.D. at 626 (citations omitted); *In re Napster,* 462 F.Supp.2d at 1078. In such case, the moving party must establish:

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the records were destroyed 'with a culpable state of mind'; and

4

(3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.

*Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002).

## III. DISCUSSION

To reiterate, this action includes a claim that Brannon violated Plaintiff's due process rights when Brannon denied Plaintiff the right to present video evidence and to call witnesses at a hearing on disciplinary charges asserting that Plaintiff hit Smith when Plaintiff and Smith were involved in an altercation on March 28, 2015. Specifically, Plaintiff requested to call all inmates who witnessed the incident, and to present any video of the incident. Brannon denied the request for witnesses, except that Brannon let Plaintiff's cell mate serve as a witness. With respect to the request to present video of the incident, Plaintiff alleges that Brannon told him there was no video of the incident, and then that any video was for official use only. Plaintiff was found guilty of battery, and sanctioned to disciplinary segregation.

### A. Pertinent Video Evidence

The court will first discuss which video evidence is subject to Plaintiff's spoliation argument. Plaintiff's motion references video evidence from Units 5-8 from 8:00 p.m. to 9:30 p.m. on March 28, 2015. Plaintiff's allegations in this action, insofar as they relate to this motion, are that Brannon denied him the opportunity to present evidence or witnesses in a disciplinary hearing concerning a charge that he assaulted Correctional Officer Smith. This alleged assault took place in Unit 5; therefore, footage from the other units, which go to other allegations of excessive force set forth in Plaintiff's lawsuit in 3:15-cv-0033-MMD-VPC, are not relevant. As such, the court's relevancy inquiry will focus on video footage from Unit 5.

Insofar as video evidence from Unit 5 is concerned, Plaintiff's motion also references video from Unit 5, as well as footage from any hand-held camera depicting the incident or witnesses to the incident. Plaintiff acknowledges Defendants' representation the altercation between Plaintiff and Smith on March 28, 2015 was not captured by any mounted cameras because the altercation occurred in the rotunda of Unit 5, which does not have video camera coverage. Plaintiff's request for video evidence also included video footage from elsewhere in Unit 5 which might have captured potential witnesses to the altercation between Plaintiff and Smith, whom he could have called as witnesses at his disciplinary

5

hearing.

Finally, Plaintiff makes reference to a handheld camera operated by Sergeant Roberson, however, it was clarified at the hearing that this was a still-picture camera, and not a video camera.

In sum, the court's analysis of Plaintiff's spoliation motion will focus on the purported destruction or failure to preserve video evidence from Unit 5 that may have depicted witnesses to the altercation between Plaintiff and Smith on March 28, 2015.

**B. Obligation to Preserve the Video Evidence**

"As soon as a potential claim is identified, a litigant is under a duty to preserve the evidence which it knows or reasonably should know is relevant to the action." *In re Napster*, 462 F.Supp.2d at 1067 (citations omitted); *see also Surowiec v. Capital Title Agency, Inc.,* 790 F.Supp.2d 997, 1005 (D. Ariz. 2011). The Ninth Circuit has held, however, that a party does not engage in spoliation of evidence when, *without* notice of the evidence's potential relevance, it destroys the evidence according to its policy or in the normal course of its business. *United States v. $40,955.00 in U.S. Currency*, 554 F.3d 752 758 (9th Cir. 2009).

In his declaration Associate Warden at NNCC, Ronald Shreckengost, states that he did review video from March 28, 2015 for housing units 4-8 at NNCC, and that it did not depict the incident involving Plaintiff. (ECF No. 106-1 ¶ 9.) At the hearing, the court asked defense counsel *when* Mr. Shreckengost reviewed the video footage from March 28, 2015, and counsel represented that he did so either on the date of the incident, March 28, 2015, or the following day. Insofar as the video taken may have identified potential witnesses to the altercation, the declaration states that the video is on a recording loop, which records over it every ten to fourteen days unless there is an incident, in which case NDOC makes a copy of the recording and keeps it. (*Id*.) He says that there was no significant incident recorded that required NNCC to make a copy of the video footage from the units, and the video footage was recorded over pursuant to NDOC policy, so there is no videotape footage of potential witnesses. (ECF No. 106-1 ¶¶ 10-12.)

While it may not have depicted the incident between Plaintiff and Smith, other evidence in the record suggests that the video footage taken from Unit 5 did depict inmates who may have witnessed the altercation between Plaintiff and Smith. (See ECF No. 100 at 26.) Specifically, Frank Sherman stated

in his report that he began checking institutional cameras on the date of the incident—March 28, 2015—for Unit 5 and did not see the incident on camera. (ECF No. 100 at 26.) He did state that when he checked the playback of the unit for any possible information nothing was seen except for inmates "mingling in the wings." (*Id*.) The court finds there is some question as to whether Mr. Shreckengost would have known that footage depicting only inmates "mingling in the wings" would have been relevant to a claim at that point.

Plaintiff cleared this up, however, when he sent a kite to Warden Walsh on April 5, 2015, specifically asking for this video footage, noting that the rotunda was full of inmates, and that he sought the video to confront the witnesses and charges against him. (ECF No. 100 at 14.) At this point, the video footage would not yet have been recorded over pursuant to the policy described by Shreckengost; yet, the video was still not retained. To be clear, the duty to preserve evidence applies to the period before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation. *See Surowiec,* 790 F.Supp.2d at 1005 (citations omitted). Walsh would have known that the video footage from Unit 5 depicting inmates who may have witnessed the altercation between Plaintiff and Smith was relevant to Plaintiff's claim when Plaintiff sent his request on April 5, 2015. At that point, the routine video retention policy should have been suspended, and the video should have been preserved.

**C. State of Mind and Relevance**

"'Courts have not been uniform in defining the level of culpability—be it negligence, gross negligence, willfulness, or bad faith—that is required before sanctions are appropriate for evidence destruction." *Reinsdorf,* 296 F.R.D. at 627 (citation and quotation marks omitted). In the Ninth Circuit, "a party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions." *In re Napster*, 462 F.Supp.2d at 1066 (citing *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir 1993)). The state of mind, however, is "relevant to what sanction, if any, is imposed." *In re Napster,* 462 F.Supp.2d at 1066-67. As indicated above, "[o]nly 'wilfulness, bad faith, and fault' justify terminating sanctions." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills,* 482 F.3d 1091, 1096 (9th Cir. 2007) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 912 (9th Cir. 2003). Courts have held that the "culpable state of mind" for an adverse inference instruction includes "simple notice of 'potential

relevance to the litigation,'" gross negligence and even negligence. *Reinsdorf*, 296 F.R.D. at 627-28 (citations omitted). "[W]hen the spoliating party was merely negligent, the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction." *Id.* (citation and quotation marks omitted).

There is no specific evidence before the court indicating that the video evidence was destroyed in bad faith, but there is at least evidence that NDOC officials allowed the evidence to be recorded over despite being put on notice that it was relevant to Plaintiff's claim as of April 5, 2015.

This finding requires a return to the discussion of relevance and prejudice in terms of determining what type of sanction, if any, is appropriate for the failure to preserve the video evidence here.

"'[R]elevance' for spoliation purposes is a two-pronged finding of relevance and prejudice because for the court to issue sanctions, the absence of the evidence must be prejudicial to the party alleging spoliation of evidence." *Reinsdorf*, 296 F.R.D. at 627 (citations and quotation marks omitted). "The prejudice inquiry looks to whether the [spoiling party's] actions impaired [the non-spoiling party's] ability to go to trial or threatened to interfere with the rightful decision of the case." *Leon*, 464 F.3d at 959 (internal citation and quotation marks omitted) (alteration original).

The video footage showing potential witnesses to the altercation is certainly relevant to Plaintiff's claim that his due process rights were violated at his disciplinary hearing when he was denied the right to present other witnesses and was denied the right to view video footage that might identify witnesses to the incident where he was accused of hitting Smith. The absence of the video evidence is prejudicial to Plaintiff in the sense that having that evidence would have helped him prove his claim that there were other witnesses that he was precluded from calling at the hearing. The prejudice is limited, however, because Plaintiff is in possession of a report where Frank Sherman affirmatively stated that he reviewed video footage from Unit 5 and it showed other inmates mingling in the wings of the Unit 5 rotunda. He can present this as evidence that there was video footage depicting other inmates who may have witnessed the incident, and he was denied review of the video for the purpose of identifying and calling other witnesses. Under these circumstances the court does not find it appropriate to recommend an adverse inference instruction. *See Apple Inc v. Samsung Electronics Co., Ltd. (Apple II)*, 888 F.Supp.2d 976, 993 (N.D. Cal. 2012) (citations omitted) (even where three-part spoliation test is satisfied, a court

may deny request for adverse inference where degree of fault and level of prejudice were insufficient to justify the imposition of the sanction).

**D. Appropriate Sanction**

While the court does not find that an adverse inference instruction is appropriate, it concludes that Plaintiff is entitled to some sort of relief for the failure to preserve the video evidence from the date of the incident, which can at least be characterized as negligent. *See Apple II*, 888 F.Supp.2d at 993 (citing *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994) (courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim")).

Here, the court finds a more appropriate sanction under the court's inherent power would be to allow Plaintiff to present evidence and argument to the jury that he asked for this video footage; that the prison had a duty to preserve the footage once he asked for it; that other employees of the prison (and not the Defendants) failed to preserve the video footage; and that the video would have shown there were other inmates present in the wings of the Unit 5 rotunda that may have witnessed the incident between Plaintiff and Smith.

**E. Imputation**

Finally, the court must address the fact that there is no evidence that the parties to this action—Brannon and Smith—had any responsibility for the failure to preserve the video evidence. Instead, it was the responsibility of NDOC. Therefore, the court must decide whether NDOC's failure to preserve the evidence should be imputed to the Defendants.

District courts within this circuit have held that spoliation by a prison may be imputed to named defendants in circumstances similar to these. The seminal case on this topic appears to be *Pettit v. Smith*, 45 F.Supp.3d 1099 (D. Ariz. 2014). That case involved an Eighth Amendment excessive force claim, and the plaintiff argued, *inter alia,* that the incident was recorded by a defendant, who turned it in to his supervisor, and the supervisor ordered the video erased several days after the incident. *Pettit*, 45 F.Supp3d at 1103. There, as is the case here, there was no evidence that the defendants named in the case were responsible for destruction of the video, and the defendants argued that they therefore had no duty to preserve the evidence. *Id.* at 1106. The court disagreed, finding that the prison was "not a

disinterested third party," but was responsible for Defendants' training and conduct, and had control over the evidence and over the inmate's ability to access the evidence, as well as the defendants' ability to preserve it. *Id*. It also pointed out that the State of Arizona, of which the department of corrections was an agency, indemnified employees for damages for which an employee became legally responsible within the course and scope of employment. *Id*. The state also funded the defense of their employees in such lawsuits. *Id*. As a result, the court determined that the prison "had a duty to preserve evidence relevant to th[e] case once it knew that litigation was reasonably likely." *Id.* (citation omitted). The court concluded that "there [was] strong reason to impute the spoliation of [the prison] to [the] Defendants to ensure that fairness is done at trial." *Id*. at 1110. As a remedy, the court did not award the case dispositive sanctions requested by the plaintiff, but instead ordered that the loss of evidence be explained to the jury, and allowed the jury to infer that the lost evidence would have favored the plaintiff's position. *Id*. at 1110-11. The court pointed out that there would be "no suggestion …to the jury that Defendants themselves [were] in any way responsible for the loss of evidence." *Id*. at 1111.

Here, the court likewise finds that NDOC is not just a "disinterested third party." The prison is responsible for the training and conduct of its employees, and according to the declaration of Mr. Shreckengost, appears to have had control over the video evidence. As in *Pettit,* the State of Nevada, of which NDOC is a department, indemnifies employees for damages for which they become legally responsible within the course and scope of employment, and funds the defense of employees in such lawsuits when requested. *See* Nevada Revised Statutes (NRS) 41.0339, 41.0349. Therefore, the court finds that the prison had a duty to preserve the video evidence once Ms. Walsh was put on notice that it was potentially relevant to Plaintiff's claim, and the prison failed to preserve the evidence. Under these circumstances, there are grounds for imputing the spoliation to the Defendants.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an order **GRANTING IN PART AND DENYING IN PART** Plaintiff's motion (ECF No. 100). Plaintiff's requests for some sort of dismissal sanction or per se adverse inference instruction should be denied. It is recommended, however, that the spoliation of the video evidence be imputed to the named defendants and that as a sanction Plaintiff should be allowed to present evidence and argument to the jury that he asked for this

video footage; that the prison had a duty to preserve the footage once he asked for it; that other employees of the prison (and not the Defendants) failed to preserve the video footage; and that the video would have shown there were other inmates present in the wings of the Unit 5 rotunda that may have witnessed the incident between Plaintiff and Smith.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED:  September 27, 2017.



_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE