Joseph Mizzoni ID NO. 68549
HIGH DESERT STATE PRISON
22010 COLD CREEK ROAD
P.O. BOX 650
INDIAN SPRINGS, NEVADA 89018

IN THE UNITED STATES DISTRICT COURT
OF THE DISTRICT OF NEVADA

| | |
|---|---|
| JOSEPH MIZZONI, Plaintiff | CASE NO.: 3:15-CV-00499-MMD-WGC |
| v. | DEPT. NO.: _____ |
| STATE OF NEVADA et al, Defendant | DOCKET: _____ |

"OBJECTIONS TO MAGESTRATES JUDGES REPORT & RECOMMENDATION"

COMES NOW, Pro-se, Joseph Mizzoni, herein above respectfully moves this Honorable Court for an Response to Plaintiff "OBJECTIONS TO MAGISTRATES JUDGES REPORT & RECOMMENDATION" on his §1983 Civil Rights Complaint. PURSUANT TO USC §1983.

This Motion is made and based upon the accompanying Memorandum of Points and Authorities.

DATED: this 27 day of March, 2018

BY: _____
Joseph Mizzoni      # 68549
Defendant/In Proper Personam

-1-

## I.

### STATEMENT OF FACTS IN SUPPORT "I" UNDER POINTS AND AUTHORITIES

1. (FACT-1) Plaintiff filed his response to defendants "Motion for Summary
2. of Judgement" on the 28, day of November 2017 as Document (ECF No. 123), titled
3. as "Motion To Oppose Defendants Motion For Summary Judgment And Sealed
4. Exhibits/And Reverse Summary Judgment To Plaintiff For All Relief"
5.
6. (FACT-2) Plaintiff Joseph Mizzoni #68549 is Pro-Se. See; Haines v. Kerner 404
7. U.S. 518, 520 (1972) (Allegations of a prose Complaint are held to less stringent
8. standards then formal pleadings drafted by lawyers.
9.
10. (FACT-3) This Court filed a "REPORT & RECOMMENDATION OF US MAGISTRATE
11. JUDGE", Document 139, Filed 3-12-18, Re: ECF No. 118 on CASE# 3:15-CV-00499-MMD-WGC.
12. Plaintiff now responds with in (14) days of receiving that DOC#139 on 3-16-18.
13. The Court granted defendants Summary of Judgment on (ECF No. 118). Plaintiff
14. now opposes. He will "use" the EXHIBITS from his response and opposition
15. motion of the Defendants Summary of Judgment (ECF No. 123).
16.
17. (FACT-4) Plaintiff first address page 1 of 15 on the Report (ECF No. 139)
18.    This Court dismissed EXHIBITS B, C, and G on this response, to the defendants
19. Summary of Judgment. Plaintiff opposes, these exhibits are crucial to the
20. plaintiffs due process rights to a disciplinary hearing he is afforded by the case
21. Wolff v. McDonnell, 418 US 538-564-7! (1974) and (NDOC) Administrations Regulations
22. (AR) 707 policy. The First EXHIBIT-B is Administration Regulation (NDOC) AR
23. 422 Search & Shakedown Polices which is what caused this disciplinary hearing/
24. Incident on March 28, 2015. See; (ECF No. 123) Page 2 Line 20-28 to page 3
25. Line 1-6.  Second EXHIBIT-C is (NDOC) Administrative Regulation (AR) 707 Inmate
26. Disciplinary Process page 1-38. This Court dismisses this in Plaintiff's response to the
27. defendants Summary of Judgment which is the very root of due process rights
28. to a Inmate in the

-2-

STATEMENT OF FACTS IN SUPPORT OF "UNDER POINTS AND AUTHORITIES" (Continued)

1. Disciplinary process, and it shows plaintiff is allowed evidence and witnesses.
2. Plaintiff was denied video tape evidence in Unit 5 of A, B and C, wings, and outside
3. of Unit 5, Outside of Unit 4, Outside/Inside Unit 8, Inside/Outside Unit 7,
4. which showed witnesses in Unit 5 coming and going from Wings where they live
5. to and from the Unit 5 rotunda where C/O C. Smith officers report states
6. plaintiff committed a Disciplinary Infraction of battery and inmate witnesses.
7. One witness was in fact Inmate Chris Deyerte #1010262 and was called as
8. a witness and stated on recording there were other inmates who saw and witnessed
9. what happen, and they were not allowed nor were there the Video evidence to
10. question those witnesses, because the defendants and (NNCC) Prison Administration
11. said they destroyed the Video. See; (ECF No. 123 EXHIBIT-D Audio Recording for
12. Disciplinary Hearing May 1, 2015 CD Recording. See; (ECF No. 123) EXHIBIT-H
13. (Document 112) Report & Recommendation of US Magistrate Judge Re: ECF No. 100 pg 10-11.
14. See; (ECF No. 123) EXHIBIT-A-0016 C. Smith Report.
15. On EXHIBIT-H plaintiff was granted Spoliation of Video evidence as to
16. Unit 5 A, B and C, wings; based on that the Video would of shown inmate
17. witnesses of the incident between C. Smith and Mizaani. See; (ECF No. 123)
18. EXHIBIT-H Page 11 LINE 1-4. So there for denying Exhibit C NDOC AR 707
19. Disciplinary Process on page 5 of 38, 1.9 • (A qualified opportunity to call
20. witnesses with substantive knowledge of issues and present documentary
21. evidence provided that to do so will not jeopardize institutional security or
22. correctional goals.), would be denying plaintiff his constitutional rights to (NDOC)
23. AR 707 Disciplinary Policies and due process to defend himself at a disciplinary hearing
24. would in its self be "atypical Hardship". See also, Wolff v. McDonnell 418 U.S.
25. 533-564-71 (1974).
26. Finely EXHIBIT-G was denied by the Court which is the heart of the
27. Video Evidence and procedures on Video use. In plaintiffs case, See; (ECF No 123)
28. EXHIBIT-G-NDOC Administration

-3-

I.

STATEMENT OF FACTS IN SUPPORT I "UNDER POINTS AND AUTHORITIES" (continued)

1. Regulation 405 USE OF FORCE Pages 6 of 18 to 7 of 18. In this AR405
2. it states: B. Spontaneous Use of Force may be used by staff to
3. respond to an emergency or immediate threat when there is not time
4. to formulate a plan or notify an immediate supervisor, and the situation
5. constitutes a serious threat to the safety of staff, public, inmates and/or
6. Institutional security. Immediate use employed in a manner that poses the least
7. risk to staff, the public and inmates,
8.    a. Where force was used spontaneously, regardless of injuries reported
9.       contemporaneous with the event, the area supervisor/incident commander
10.       shall immediatly review, if available any Video Surveillance that may have
11.       Captured the Use of Force.
12.    b. If the use of force was captured on video, from any angle "on any camra,"
13.       the recording in a manner and location that is easily retrievable in the event
14.       review is needed. The video must be maintained for "No Less Than (3) three
15.       years from the date force was used.
16.    c. If no camras were operational in that Unit or No Camras captured
17.       the use of force, the area supervisor/incident commander shall make a notice
18.       of same in the use of force incident report.
19.    d. In addition to and apart from any surveillance footage from stationary
20.       camras that may exist video footage shall be ~~~~~ recorded via a
21.       "Hand Held Camra", as
22.     • As soon as the ~~~ shift supervisor becomes aware of that force is
23.       being used, a staff member shall be directed to immediatly obtain a
24.       Handheld video camra and Shall be ordered to the scen where force
25.       has been use.
26.     • Imediatly upon arrival to the scene, the staff video recording begins
27.       recording, noting the time and date the recording begins and identify
28.       himself/herself as

-4-

# I.

## STATEMENT OF FACTS IN SUPPORT: "UNDER POINTS AND AUTHORITIES"    (Continued)

1. video recorder. The staff video recorder shall continue to take footage
2. until the area supervisor/Incident Commander decides the incident is over and
3. instructions the staff video recorder to cease recording.
4.   • For any breaks in recording, the recording staff member must sign
5.     back on with the date, time, and reasons for the break in recording.
6.
7. If the Use of Force is still occurring when the staff video recorder arrives,
8. the incidents shall be recorded to capture the unfolding events while
9. waiting for a response team, even if through windows, fences, bars, or
10. even if far away, etc... Staff shall not place themselves in any danger
11. to capture the events.
12.
13. C. The Warden/Division head shall ensure the Use of Force Operational
14. Procedures are specific on the process for the recording of Use of Force
15. incidents and storage of the video recordings.
16. See; U.S. v. MYERS, 106 F.3d 936 (10th Cir. 1997) (It is basic
17. canon of statutory construction that the use of word "SHALL"
18. indicates mandatory intent.) The defendants on both Case #3:15-CV-00313-
19. MMD-VPC and this case # 3:15-CV-00499-MMD-WGC did not go by
20. there own Administration Regulations per Video polices of AR 405.
21. See; The Administrative Procedures Act (APA), established the procedures
22. for enacting rules and with the federal ApA being found at 5 USC §§551
23. et seq. (The courts current mind set appears to reinforce the trend of
24. making there agencies follow there own rules with numerous court orders
25. and directives being issued, directing there agencies to follow there own
26. rules and regulations.) This reference from THE BOOK 16th Edition Third Update
27. pg V. All Supervisors C/O's Hill, Henely, Robertson, Chander and others had a duty to follow
28. there own rules/regulations.      -5-       "They did NOT, including defendants.

## I.

STATEMENT OF FACTS IN SUPPORT "UNDER POINTS AND AUTHORITIES"   (Continued)

1. This court denied all of these EXHIBITS which are the root of
2. plaintiffs due process rights, and EXHIBIT-G is crucial to present a
3. defense by showing Video that should be preserved (per-AR 405) so
4. plaintiff could show and have witnesses and video evidence to marshall
5. the charges and facts as a defense. He was denied all video "not just Unit 5"
6. He needed all Video from Unit 5, Unit 8, Unit 4, Unit 7 inside and outside to
7. show he was punished without due process of a Disciplinary Hearing by
8. being and having his head pounded on floor, and scared, pain, and suffering
9. by several C/O's while cuffed, leg shackled, and C/O Holden plaintiff down, then
10. dragged backwards by (4) C/O's in a Choke hold, wrist and fingers bent up, cuffs
11. tighten to cause nerve damage, cuts and bleeding with Hepititis-C and no
12. medical attention, but dragged (4) mile to medical at night. This in its self
13. is an atypical Hardship if you compare ordenary incidents of prison life by
14. Id. at 484 IN Sandin. and being punished before a Disciplenary hearing is a
15. liberty interest under the 14th Amendment to USCA. And then the defendants
16. C/O C Smith lied and conspired with C/O Allison and Arterger to file a false
17. Disciplenary Reports, in which is a "Atypical and significant Hardship" in
18. its self. They all had a duty to follow the policies under NDOC) AR 405 spontaneous
19. use of force on page 6 of 18 to 7 of 18, and they did not video tape any
20. of the insident from Unit 5, 4, 8 or 7 because it would of incriminated
21. them all. All EXHIBITS B, C, and G are relevent and the root of
22. plaintiffs due process claim, and then the Court granted spolitation of
23. video evidence and witnesses in Unit 5 and on that plaintiff was told
24. he could tell a "jury" that plaintiff and that he ask for this video for
25. his due process of evidence and witnesses ~~see~~ that seen plaintiff not hit Smith.
26. See; (ECF No 173) EXHIBIT-K.  If the court grants plaintiffs   (ECF No.100)
27. spolitation on this part for a "Jury" to be told, how can plaintiff be dissmissed?
28.

-6-

I

STATEMENT OF FACTS IN SUPPORT ("UNDER POINTS AND AUTHORITIES"   (continued)

1. When this in itself is material facts to go to trial?" This video is
2. a due process constitutional violation that with out it, or with it
3. even better would show plaintiff in a "Atypical Hardship Situation".
4. If the Court is not going by the (NDOC) Policies (AR's) for Disciplinary
5. due processes, and now not sanctions the Defendants on the First
6. out of three sanctions as it said it would, "for evidence and witness"
7. destruction", then what does plaintiff receive for a sanction of this
8. due process violation?", for his disciplinary hearing?" Plaintiff must receive
9. a trial inorder to tell a Jury the defendants purposely destroyed Video
10. and witness to that Disciplinary Hearing. How can one be guilty without evidence?
11.
12. (FACT 5.) Plaintiff addresses PAGE 1 of 15 to 2 of 15 of (ECF. No 139).
13.      Plaintiff agrees to all this part of the report.
14.
15. (FACT 6.) Plaintiff addresses PAGE 2 of 15 Lines 27-28 to PAGE 3 Lines 1-5 on
16. (ECF. No. 139).
17.      Plaintiff opposes "all" of the defendants versions of events. LT. Brannon
18. did violate plaintiffs due process rights to the 14th Amed. USCA because
19. plaintiff does have a liberty interest and is constitionally entitled to
20. due process protections. He, Lt Brannon has a duty to follow the
21. AR 707 (NDOC), AR 405, Rules and Regulations per NDOC AR 707 Disciplinary
22. Procedures under Page 5 of 38, 1.9 ("A qualified opportunity to call witnesses
23. with substantive Knowledge of issues and present documentarly evidence
24. provided that to do so will not jepordize institutional securety or correctional
25. goals.) and NDOC AR 405 USE OF FORCE, Pages 6 of 18 to 7 of 18 see; Page 4 to
26. 5 Line 1-15 of this Opposition Motion. And see; (ECF.No 123) EXHEBIT-C. AR 707.
27. At no time on recording or written was plaintiff told it was a security risk
28. for the witnesses on the video.

-7-

## I.

STATEMENT OF FACTS IN SUPPORT I "UNDER POINTS AND AUTHORITIES"   (Continued)

1. LT. Brannon denied plaintiff all video evidence, he never said there
2. was none he said its our policy to not let a inmate see the video. And
3. on his Interogatories and Admission responses he admits the video
4. cameras worked on date of incident 3-28-15. So with the fact of having
5. one or more witness plaintiff should not of been found guilty any ways,
6. and the video "A11" would of shown the witnesses and the punishment before afforded
7. a disiplency hearing. The defendants state that so evidence is the officers
8. report and medical report. The requirements of due process are satisfied if
9. "some evidence" supports the decission by the prison disciplenary board. "Superintent
10. Massachusetts Corr. Inst., Walpole v. Hill, 472, U.S. 445, 455 (1985).
11. However, this standard does not apply when a prisoner alleges that a prison
12. guards report is false. Hines v. Gomez, 108 F.3d 265, 268 (9th Cir. 1997).
13. C/O Smith's version is false and plaintiff can prove it and its material
14. fact at a minimum for a Jury trial. See: (ECF.No.123) EXHIBIT-E (NDOC)
15. Investigation Detail Reports for All Correctional Officers on March 28, 2015 Night.
16. On these reports there were (4) officers, Senior John Hill, C/O Joseph Allison,
17. C/O Robert Ardinger and C/O Scott Smith who "all" came from Unit 4 at (NNCC)
18. Prison to Unit 5 and First on the 3-28-15 Insident seen.
19.   The First Detail Report Senior John Hill states on EX-E page 3 of 10 of the reports:
20. On Saterday 3-28-15 Myself and Officers Allison, Ardinger, S. Smith did arive in
21. Unit 4. page 4 of 10 Reports: Myself and the three officers departed from Unit 4
22. enroute to Unit 5. Upon arrival Officers Allison, Ardinger, S. Smith, provided
23. assistance to Officer C. Smith, while I began to disperse inmates.
24.   The Second Detail Report of Correctional Officer Allison and Ardinger states
25. on EX-E page 7 of 10: On 3-28-15 Allison and Ardinger assisted C. Smith the
26. Unit officer and Inmate Mizzoni were on the ground struggling, C. Smith was
27. on top of Mizzoni trying to control him while Mizzoni was attempting
28. to

-8-

E.

STATEMENT OF FACTS IN SUPPORT I "UNDER POINTS AND AUTHORITIES"   (Continued)

1. punch Officer C. Smith, I assisted Officer C. Smith by placing my left hand on
2. Mizzoni's head so he was unable to bite or spit on officers, I also
3. assisted by placing my right knee against Mizzoni's left shoulder and my right
4. hand on his right shoulder because Mizzoni continued to struggle and resist
5. staff. I was giving verbal commands to Mizzoni to quit resisting and
6. stop fighting. After the Unit was locked down and the inmate was in wrist
7. restraines. I assisted Inmate Mizzoni to get his feet and he continued to
8. resist by dropping his weight down refusing to stand up streight.
9.     The Third Detail Report of Correctional Officer Scott Smith on EXHIBIT-E
10. page 6 of 10 to 7 of 10 report states: I C/O Scott Smith was in Unit 4
11. When I responded to Unit 5. When I got there Officer C. Smith had
12. Inmate Mizzoni #68549 on the ground "Hand Cuffed". I help secured the Unit
13.     These Officers Detail Reports of the 3-28-15 insident clearly show a
14. material facts to show plaintiff has another witness C/O Scott Smith to prove
15. plaintiff is inicent of this disciplenary. Also shows the defendant C. Smith, C/O Allison,
16. and C/O Ardinger conspired and wrote false reports and a false disciplenary
17. report beyond any doubt. This in itsef is "Atypical and Significant Hardship"
18. from the ordenary relation to insudents in prison life." Id. at 484 In Sandin. Which
19. is as plaintiff states, Allison and Ardinger used punishment on the spot to disciplen
20. plaintiff, along with Unit 5 Officer C. Smith the defendant without a due
21. process hearing, write up, Inpershod decision maker, witnesses, evidence, not anything
22. but how they explain the punishment in Detail Reports on EXHIBIT-E. This in
23. its self is grands for dismissal of the latter disciplenary report by C. Smith.
24. See; (ECF No. 123) EXHIBIT-A-006 C. Smith Notice of Charges. Here C. Smith
25. says on line 12-16 Ardinger was first to arrive in Unit. At this time I
26. was able to get wrist restrains onto inmate Mizzoni. As soon as officers were
27. able to take over restraining Inmate Mizzoni, I walked out to catch my breath.
28. S. Smith says plaintiff was cuffed and

-9-

STATEMENT OF FACTS IN SUPPORT I "UNDER POINT AND AUTHORITIES    (Continued)

1. C. Smith was on top of plaintiff by himself, so he went and secured the
2. Unit 5. He didn't use punishment or any force like Allison, C. Smith the defendant,
3. and Ardinger state. Also Senor John Hell said he and the (3) c/o's got to
4. the Unit 5 "at the same time" and the (3) officers Allison, Ardinger and Scott
5. Smith assisted the Defendant C. Smith "at the same time". See; Johnson v. State,
6. 564 So. 2d 100 (Ala. 1989) (However, a Prison disciplinary report which only
7. states that it finds the inmate guilty and that it accepts the officers
8. statement is not adequate.) Also See; (ECF No. 123) EXHIBIT-A Disciplinary
9. Hearing Report on-100.3 page 2 of 4 of that report Evidence Relied on for
10. Disciplinary Hearing, it states: 5/01/2015 Lt. Brannon Officers Report and Injuries
11. noted that officer was treated for. This show Lt. Brannon "only" relied on
12. officer Reports, and not All officers reports, Video or witnesses to find plaintiff
13. guilty in which is evidence not here say. See; U.S. v HAISE, 162 F.2d 354 (5th Cir 1998)
14. (FALSE STATEMENTS, Convictions must be reversed under False Witnesses.) Like C. Smith.
15. (FACT 7) Plaintiff addresses (ECF No 139) B. Analysis, the Atypical and
16. Significant Hardship on PAGE 11 Lines 14-28 to PAGE 14 Line 1-28.
17.     Plaintiff opposes the Courts version that his situation was not Atypical
18. and Significant Hardship expecially when plaintiff can prove by detail reports
19. he didn't hit C. Smith or throw punches, or not comply, or was unhandcuffed, and
20. that the report is truely false. And without this write up disciplining plaintiff
21. would not of been punished for that write up. By being punished by the
22. Disciplinary Report by Defendant C. Smith being False, Plaintiff was truely
23. put into a Atypical and Significant Hardship, and all that Hardship
24. is illegal; 2 years Disciplinary Segregation, Moved from a Level 1 custody minimum
25. yard to a Level 5 max yard / Super max, and losing all the privileges and
26. Amenities in ordenary relations to insidents in prison at the minimum custody Level 1
27. at (NNCC) minimum prison Compared to the Level 5 max/super max at Ely State Prison.
28. See; (ECF No. 123) Page 16 Line 1-28 to

-10-

## I.

STATEMENT OF FACTS IN SUPPORT I "UNDER POINTS AND AUTHORITIES"     (Continued)

1. page 17 Line 1-7. which is compared to the minimum prison to the max prison.
2. For the record plaintiff is comparing the minimum level 1 yard in prison to the
3. Level 5 in a max prison yard. Just the comparison to a false Disciplinary and
4. destroyed Videos and witnesses compared to the illegal punishment is Atypical
5. and a Significant Hardship, and plaintiff can prove it all. "Sandin" requires a
6. factual comparison between conditions in general population or administrative
7. Segregation (whichever is appliable) and disciplinary segregation examing the
8. hardship caused by the prisoners challenged action in relation to the
9. basic conditions of life as a prisoner." Jackson v. Carey, 353 F.3d 750, 755
10. (9th Cir. 2003). In "Sandin" the inmate was sentence to (30) days only,
11. compared to the plaintiffs 2 years of D/S which does present a dramatic
12. departure from basic conditions of [his] sentence on a minimum Level 1
13. Custody compared to a Level 5 max/super max prison and a transfer to it.
14. In plaintiffs case his Disciplinary Segregation is not mirrored compared to
15. his Level 1 custody at a Minimum Prison yard, not protective custody or
16. Administration Custody. Plaintiff was on a minimum General Population Level 1
17. prison yard. This Court compares this case # 3:15-CV-00499-MMD-WGC to
18. case # 3:11-CV-00186-LRH-WGC as to state they are the exactly
19. the same Conditions of Confinement, "THEY ARE NOT." Plaintiff was at
20. Ely State Prison / Housed Max Prison on Case # 3:11-CV-00186-LRH-WGC and at
21. that time the conditions and freedom of restrain were very Similar, in
22. this case they are not. Another Atypical Significant Hardship is not only
23. was the plaintiff transfered from Level 1 Custody Prison at minimum status
24. to Level 5 max/super max prison but the defendants LT Brannon never gave
25. plaintiff a classification Hearing to be transfered from minum custody to max
26. custody prisons, and plaintiff was denied due process by no notice, hearing,
27. witness, evidence ect... either Written or by capacity to move him which is a
28. Constitutional Violation under the

-11-

## I.

STATEMENT OF FACTS IN SUPPORT I "UNDER POINTS AND AUTHORITIES"   (Continued)

1. 14th Amendment to equal protection of the laws USCA. See; (ECF. No. 123)
2. EXHIBIT-A. 001 Disciplinary Sanction Notification. see on that Institutional
3. transfer/Recommended Institution (NONE). Also No loss of Canteen/store, Visitings,
4. Loss of phones, Loss of electrical appliances, Loss of Gym. Loss of nothing except
5. Stat Referral A, 24 month DS, and restitution $TBD. Also See; (ECF No. 123)
6. EXHIBIT-A. 004 Summary of Disciplinary Hearing under Results of Disciplinary
7. Hearing: DS 24 months, REST, STAT Time REF. And see; Plaintiffs §1983
8. Civil Right Complaint, B: NATURE OF THE CASE page 3-C Line 19-24 (22) For additional
9. due process to be transferred from minimum to max prison. Findly See; Wilkinson,
10. 545 U.S. 220-227. Additional due process is required under due process Clause when
11. an inmate moves from a minimum prison to a max/super max prison, and
12. he was denied it which is atypical and hardship.
13.
14. (FACTS.) Plaintiffs assertion of facts required by Rule 55(c) do show and establish
15. the existence of a genuine dispute of material facts and that a jury and this
16. court could resolve the differing versions of truth at trial. See; T.W. Elec. Serv.,
17. Inc. v. Pac. Elec. Contractors Assn., 809 F.2d 626, 630 (9th Cir. 1987). When
18. reasonable mind could differ on the material facts at issue, summary judgment is
19. not appropriate. See; Anderson, 477 U.S. at 250. See; Plaintiff ajacent Case # 3:15-
20. cv-mmd-vpc which the plaintiff is granted a trial on the excessive force part of
21. case under the same materials of this case # 00499. Fed. R. Civ. P. 56 (C)(1)(A)(B).
22.   Also see; Case # 3:11-cv-00186-LRH-WGC DIS time was 365 days/1 year, and
23. Compare Case # 3:15-cv-00499-mmd-WGC is 730 Days/2 years twice the time
24. the court use to compare, and is atypical and significant hardship compared to
25. General Population minimum Level I unrestrained to Locked down 23 Hours at max prison
26. restrained cuffed and legshackled and strip searched every where you go including to the
27. showers. Plaintiff suffered anger, charges, humiliation, mental anguish, fear, imbarasment, threats
28. by staff ect... For being inicent.   -12-

I.

STATEMENT OF FACTS IN SUPPORT OF "UNDER POINTS AND AUTHORITIES" (continued)

1. (FACT 9) Plaintiff address this Courts ORDER Doc #140 Filed 3-12-18
2. Sealing Documents H and I which are medical records of C.Smith, these
3. records were already exhibited as part of Defendants Discovery, and
4. Plaintiff opposes the sealing of those records, because he will need them
5. for case # 3:15-cv-00313-MMD-VPC Trial and this case # 00499, if
6. the appeals 9th Cir. over turns this case, and they may want to see
7. those reports on their decision.

## II CONCLUSSION

Wherefore Plaintiff opposes the granting of Defendants Motion for Summary Judgment and respectfully ask under the "Points and Authorities" enclosed on this brief, and he shows good cause why and ask for all his relief and/or a minimum Jury trial.

RESPECTFULLY SUBMITTED    BY: /s/ Joseph Mirzoni
this 27 day of March 2018
                           Joseph Mirzoni
                           #68519

-13-

III.

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

JOSEPH MEZZONI,
   Plaintiff,

VS

STATE OF NEVADA et al,
   Defendants

Civil Action No: 3:15-CV-00499-MMD-WGC

AFFIDAVIT OF JOSEPH MEZZONE FOR "OBJECTION TO MAGISTRATES JUDGES REPORT & RECOMMENDATION"

STATE OF NEVADA )
    : SS JOSEPH MEZZONE #68549 PRO-SE
(COUNTY OF CLARK )

Comes Now the plaintiff in the above styled action Mezzoni and after being duly sworn, deposes and says;

1.) He is representing himself as a Pro-se without counsel.
2.) Plaintiffs pro-se Mezzone swears by the above styled motion with points and Authorities".
3) The plaintiff is entitled by law to the relief asked for and swears under penalty and perjury §1749/NRS Laws.
4.) This Declaration of plaintiff truth to the 3-28-15 Insident and 5-1-15 Ocuplency.

RESPECTFULLY SUBMITTED
this 22 day of March 2018

BY: /s/ Joseph Mezzoni
JOSEPH MEZZONI
#68549

-14-

## CERTIFICATE OF SERVICE BY MAILING

I, Joseph Mizzoni, hereby certify, pursuant to NRCP 5(b), that on this 27 day of March, 2018, I mailed a true and correct copy of the foregoing, "__OBJECTIONS TO MAGISTRATES JUDGES REPORT & RECOMMENDATION__" by depositing it in the High Desert State Prison, Legal Library, First-Class Postage, fully prepaid, addressed as follows:

1) CLERK, U.S. DISTRICT COURT
   District of Nevada
   400 S. Virginia Street
   Room 301
   Reno, NV. 89501

2) OFFICE OF NEVADA ATTORNEY Generals
   OFFICE
   MS Albright
   100 N Carson Street
   Carson City, NV. 89701-4717

3) ~~ATTORNEY OF PLAINTIFF~~
   Joseph Mizzoni #68549
   H.D.S.P. P.O. Box 650
   Indian Springs, NV 89070

CC:FILE

DATED: this 27 day of March, 2018.

Joseph Mizzoni        # 68549
/In Propria Personam
Post Office box 650 [HDSP]
Indian Springs, Nevada 89018
IN FORMA PAUPERIS:

-15-